UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

SHREVEPORT DIVISION

| | | |
|---|---|---|
| **MARTHA S. REY** | * | **CIVIL ACTION NO.  10-1847** |
| **VERSUS** | * | **JUDGE ELIZABETH E. FOOTE** |
| **MICHAEL J. ASTRUE, COMMISSIONER, SOCIAL SECURITY ADMINISTRATION** | * | **MAG. JUDGE KAREN L. HAYES** |

**REPORT AND RECOMMENDATION**

Before the court is plaintiff's petition for review of the Commissioner's denial of social security disability benefits.  The district court referred the matter to the undersigned United States Magistrate Judge for proposed findings of fact and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) and (C).  For the reasons assigned below, it is recommended that the decision of the Commissioner be **AFFIRMED**, and this matter **DISMISSED** with prejudice.

**Background & Procedural History**

Martha S. Rey protectively filed the instant applications for Title XVI Supplemental Security Income payments and Title II Disability Insurance Benefits on April 17 and May 9, 2006, respectively.  *See* Tr. 14, 67-67, 204-206.[1]  She alleged disability as of November 30, 2004, because of mental illness and a bad back and neck.  (Tr. 90, 93-94).  The claims were denied at the initial stage of the administrative process.  (Tr. 53, 61-64, 207).  Thereafter, Rey requested and received a June 21, 2007, hearing before an Administrative Law Judge ("ALJ").  (Tr. 211-224).  However, in an August 20, 2007, written decision, ALJ Thomas Bundy found that

---

[1]  Rey filed a prior application for benefits that was denied initially on August 9, 2001, and not further appealed.  (Tr. 91).

Rey was not disabled under the Act. (Tr. 11-23). Accordingly, Rey appealed the adverse decision to the Appeals Council. On November 30, 2007, the Appeals Council denied Rey's request for review. (Tr. 5-7).

On January 22, 2008, Rey sought review before this court. *Rey v. Commissioner, Social Security Administration*, Civil Action Number 08-0089 (W.D. La.). One year later, Magistrate Judge Hornsby reversed and remanded the case for further proceedings pursuant to the fourth sentence of 42 U.S.C. § 405(g). (Jan. 9, 2009, Mem. Ruling and Judgment; Tr. 255-260.

Upon remand from the district court, the Appeals Council remanded the matter to an ALJ for further proceedings. (Tr. 261-264).[2] On August 7, 2008, ALJ Leslie Rodriguez held another hearing in the matter. (Tr. 311-347). However, in a December 16, 2009, written decision, ALJ Rodriguez determined that Rey was not disabled during the relevant period, finding at Step Five of the sequential evaluation process that she was able to make an adjustment to work that exists in substantial numbers in the national economy. (Tr. 237-253). Rey again petitioned the Appeals Council to review the unfavorable decision. However, on October 16, 2010, the Appeals Council denied Rey's request for review; thus the ALJ's latest decision became the final decision of the Commissioner. (Tr. 225-228).

On December 17, 2010, Rey sought review before this court. Succinctly restated, she alleges the following errors:

    (1)    the ALJ's residual functional capacity assessment is not supported by substantial evidence; and

---

[2] While the case was pending in federal court, Rey filed subsequent applications for Supplemental Security Income payments and Disability Insurance Benefits. On March 19, 2008, the Commissioner granted her applications and found her disabled as of August 21, 2007. (Tr. 240). Thus, the remaining issue on remand was whether Rey was entitled to disability benefits for a closed period from November 30, 2004, through August 20, 2007. *Id*.

  (2)  the ALJ's credibility finding with respect to plaintiff's symptoms, including pain, is not supported by substantial evidence.

## Standard of Review

This court's standard of review is (1) whether substantial evidence of record supports the ALJ's determination, and (2) whether the decision comports with relevant legal standards. *Villa v. Sullivan*, 895 F.2d 1019, 1021 (5th Cir. 1990). Where the Commissioner's decision is supported by substantial evidence, the findings therein are conclusive and must be affirmed. *Richardson v. Perales*, 402 U.S. 389, 390 (1971). The Commissioner's decision is not supported by substantial evidence when the decision is reached by applying improper legal standards. *Singletary v. Bowen*, 798 F.2d 818 (5th Cir. 1986). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. at 401. Substantial evidence lies somewhere between a scintilla and a preponderance. *Muse v. Sullivan*, 925 F.2d 785, 789 (5th Cir. 1991). A finding of no substantial evidence is proper when no credible medical findings or evidence support the ALJ's determination. *Johnson v. Bowen*, 864 F.2d 340, 343-44 (5th Cir. 1988). The reviewing court may not reweigh the evidence, try the issues *de novo*, or substitute its judgment for that of the Commissioner. *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994).

## Determination of Disability

Pursuant to the Social Security Act ("SSA"), individuals who contribute to the program throughout their lives are entitled to payment of insurance benefits if they suffer from a physical or mental disability. *See* 42 U.S.C. § 423(a)(1)(D). The SSA defines a disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months . . . ." 42 U.S.C. §

423(d)(1)(A).  Based on a claimant's age, education, and work experience, the SSA utilizes a broad definition of substantial gainful employment that is not restricted by a claimant's previous form of work or the availability of other acceptable forms of work.  *See* 42 U.S.C. § 423(d)(2)(A).  Furthermore, a disability may be based on the combined effect of multiple impairments which, if considered individually, would not be of the requisite severity under the SSA.  *See* 20 C.F.R. § 404.1520(a)(4)(ii).

The Commissioner of the Social Security Administration has established a five-step sequential evaluation process that the agency uses to determine whether a claimant is disabled under the SSA.  *See* 20 C.F.R. §§ 404.1520, 416.920.  The steps are as follows,

(1) An individual who is performing substantial gainful activity will not be found disabled regardless of medical findings.

(2) An individual who does not have a "severe impairment" of the requisite duration will not be found disabled.

(3)  An individual whose impairment(s) meets or equals a listed impairment in [20 C.F.R. pt. 404, subpt. P, app. 1] will be considered disabled without the consideration of vocational factors.

(4) If an individual's residual functional capacity is such that he or she can still perform past relevant work, then a finding of "not disabled" will be made.

(5) If an individual is unable to perform past relevant work, then other factors including age, education, past work experience, and residual functional capacity must be considered to determine whether the individual can make an adjustment to other work in the economy.

*See Boyd v. Apfel*, 239 F.3d 698, 704 -705 (5th Cir. 2001);  20 C.F.R. § 404.1520. The claimant bears the burden of proving a disability under the first four steps of the analysis; under the fifth step, however, the Commissioner must show that the claimant is capable of performing work in the national economy and is therefore not disabled.  *Bowen v. Yuckert*, 482 U.S. 137, 146 n. 5 (1987).  When a finding of "disabled" or "not disabled" may be made at any

step, the process is terminated. *Villa v. Sullivan*, 895 F.2d 1019, 1022 (5th Cir. 1990). If at any point during the five-step review the claimant is found to be disabled or not disabled, that finding is conclusive and terminates the analysis. *Lovelace v. Bowen*, 813 F.2d 55, 58 (5th Cir. 1987).

## Analysis

### I. Steps One, Two, and Three

The ALJ determined at Step One of the sequential evaluation process that Rey did not engage in substantial gainful activity during the relevant period. (Tr. 242). At Step Two, he found that she suffers severe impairments of obesity, major depressive disorder, and personality disorder. (Tr. 243). The ALJ concluded, however, that the impairments were not severe enough to meet or medically equal any of the impairments listed in Appendix 1, Subpart P, Regulations No. 4, at Step Three of the process. (Tr. 244-245).

### II. Residual Functional Capacity

The ALJ determined that Rey retained the residual functional capacity to perform light work,[3] reduced by the ability to only stand and walk for four hours per day and sit for six hours per day, with the need to avoid uneven ground or hard surfaces, but with the ability to ambulate

---

[3] Light work contemplates:
> . . . lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

20 C.F.R. § 404.1567(b).

on carpeted surfaces. (Tr. 245). Although she could not climb ladders, ropes, or scaffolds, she could occasionally climb ramps and stairs, balance, stoop, kneel, crouch and crawl and occasionally reach overhead. *Id*. She also was moderately limited in her ability to understand, remember and carry out detailed instructions, interact appropriately with the general public, get along with co-workers or peers without distracting them or exhibiting behavioral extremes, and would miss about one day of work per month. *Id*.

    a)    <u>Mental Residual Functional Capacity Assessment</u>

In his residual functional capacity assessment, the ALJ essentially incorporated the July 12, 2006, mental residual functional capacity assessment completed by non-examining agency "psychologist," Jack Spurrier, Ed.D. *See* Tr. 162-165. For purposes of his findings, Spurrier reviewed the record, including a July 6, 2006, mental status examination administered by Mark Dulle, Ph.D. (Tr. 144-147). Dulle noted that, during the examination, Rey was complaining and negative, and seemed to have an axe to grind with many people. *Id*. She admitted past suicide attempts, via overdose. *Id*. She acknowledged occasional marijuana use, but denied other street drugs. *Id*. Her concentration and persistence were good; her pace moderate. *Id*. However, her insight remained weak. *Id*. Dulle diagnosed major depressive disorder, NOS; personality disorder, NOS, with dependent and borderline traits. *Id*. Her prognosis was fair. *Id*. Dulle opined that Rey appeared capable of functioning psychologically in an adequate manner on a sustained basis, but likely would continue to experience some difficulty interacting smoothly with those around her. *Id*.

Plaintiff does not contest the findings by Spurrier and the ALJ's decision to assign "moderate" limitations of functioning in the five activities specified. (Pl. Brief, pg. 2, fn2). Rather, she contends that Spurrier's finding that she was "moderately" limited in her "ability to

get along with coworkers or peers without distracting them or exhibiting behavioral extremes," must be interpreted as a finding that she cannot usefully get along with her co-workers or that she cannot consistently get along with them.

Plaintiff's argument (a cause that this court notes remains near and dear to counsel's heart, and one which he routinely raises in other cases) stems from counsel's appreciation of the instructions set forth in the Commissioner's Program Operations Manual System ("POMS") for completing SSA form 4734-F4-SUP – the form completed by the agency psychologist, Jack Spurrier.  *See* "Completion of Section I of SSA-4734-F4-SUP;" POMS DI 24510.063.  The instructions provide as follows,

> Complete Section I by checking the appropriate boxes.
>
> **1. Check Box 1**
>
> **"Not Significantly Limited,"** when the effects of the mental disorder **do not prevent** the individual from consistently and usefully performing the activity.
>
> **2. Check Box 2**
>
> **"Moderately Limited,"** when the evidence supports the conclusion that the individual's **capacity to perform** the activity is **impaired**.
> NOTE: The **degree and extent** of the capacity or **limitation** must be described in narrative format in Section III.
>
> **3. Check Box 3**
>
> **"Markedly Limited,"** when the evidence supports the conclusion that the individual cannot usefully perform or sustain the activity.

POMS DI 24510.063 (in pertinent part) (emphasis in original).

Because a "moderate" limitation is simply defined as "impaired," plaintiff's counsel employs logic formulae and syllogisms that rely upon the definitions for "not significantly limited" and "marked" to conclude that a "moderate" limitation necessarily means that the claimant either cannot perform the given activity consistently or cannot perform it usefully.  *See* MEASUREMENT

OF THE DEGREE OF FUNCTIONAL LIMITATION OF MENTAL IMPAIRMENTS BY THE SOCIAL SECURITY ADMINISTRATION REVISED FOR PRESENTATION TO THE FOSSCR CONFERENCE, IN NATCHEZ, MS, JANUARY 29, 2011, pg. 3 n10; Pl. Reply, Exh.

Although counsel's thesis is logical and well thought out, the court is not so persuaded. The instructions for completing SSA form 4734-F4-SUP explain that "moderate" means that the capacity to perform the activity is "impaired." The instructions further provide that the "degree and extent of the capacity or limitation must be described in narrative format in Section III." Importantly, however, the instructions do not require the same narrative discussion for activities that are "not significantly limited," or "markedly limited," – presumably because these latter categories are self-explanatory and concretely defined. Thus, it seems that the Commissioner purposely left "moderate" ambiguous, intending that it could range in severity from benign to significant, depending upon the degree and extent of the capacity or limitation set forth in the narrative discussion.

In the case *sub judice*, Spurrier completed the narrative portion of form 4734-F4-SUP by reciting the findings of the consultative psychologist, Dr. Dulle: "although claimant [sic] capable of functioning psychologically in an adequate manner on a sustained basis, she will have difficulty interacting smoothly with whose [sic] around her . . ." (Tr. 164). The ALJ, in turn, defined a "moderate" limitation for purposes of his hypothetical to the vocational expert as "the ability to do work satisfactorily." (Tr. 342).

The ALJ's definition of "moderate" is a truncated version of the definition of "moderate" that is set forth in the Medical Source Statement of Ability to do Work-Related Activities (Mental), Form HA-1152-U3 (06-2006) frequently used by consultative or treating

psychologists.[4] In contrast to form 4734-F4-SUP that is completed by agency psychologists, form HA-1152-U3, contains five rating categories: none, mild, moderate, marked, and extreme. These same five rating categories are used on the psychiatric review technique. *See* Form SSA-2506-BK, Tr. 158; POMS DI 24505.025. Consequently, form HA-1152-U3 appears designed to assist agency psychologists and the ALJ not only with the residual functional capacity assessment, but also with the psychiatric review technique. Thus, a "moderate" limitation for purposes of form HA-1152-U3 apparently means little more than the impairment is "severe" as contemplated by the regulations, but not so severe as to render work performance unsatisfactory. Under form 4734-F4-SUP because there are fewer rating categories, "moderate" necessarily has a broader connotation, ranging from benign to approaching "marked."

Here, as in most other cases, the ALJ defined "moderate" on the lower end of the impairment scale. The record contains substantial evidence to support the ALJ's determination.[5] For instance, Dr. Dulle opined that although Rey would have "some difficulty interacting smoothly with those around her," she remained capable of functioning adequately on a sustained basis. (Tr. 147). In other words, the limitation on her ability to interact with others was not debilitating. Furthermore, pursuant to a May 2, 2006, psychiatric evaluation, Sachin Phansalkar, M.D. assigned a Global Assessment of Functioning ("GAF") score of 60-65,[6] which

---

[4] The full definition of "moderate" contained in the form is "[t]here is more than a slight limitation in this area but the individual is still able to function satisfactorily." *Id*.

[5] Likewise, the Fifth Circuit has approved this definition of "moderate" in numerous other cases. *See Giles v. Astrue*, 433 Fed. Appx. 241 (5th Cir. July 18, 2011) (unpubl.); *Cantrell v. McMahon*, 227 Fed. Appx. 321, 2007 WL 557567 (5th Cir. 2007) (unpubl.); *Beene v. McMahon*, 226 Fed. Appx. 348, 2007 WL 836926 (5th Cir. 2007) (unpubl.); and *Zills v. Barnhart*, 220 Fed. Appx. 289, 2007 WL 627605 (5th Cir. Feb. 27, 2007).

[6] "GAF is a standard measurement of an individual's overall functioning level 'with respect only to psychological, social, and occupational functioning.'" *Boyd*, 239 F.3d at 701 n2

predominantly suggests mild symptoms.[7]

Rey's own testimony, at least at times, also supports a moderate limitation of social interaction that is on the mild/satisfactory side. For instance, when prompted at the hearing to explain why she could not perform some jobs that she performed in the past, Rey stated that it was because of the heavy lifting requirements, i.e., not because of her mental impairment(s). *See* Tr. 326. She also stated that she really did not have any problems with supervisors. (Tr. 328). Rey suggested that she only became angry with co-workers when they talked "bad" to her. (Tr. 328). Plaintiff's testimony appears to confirm Dr. Dulle's impression that she was primarily personality disordered with maladaptive coping skills. (Tr. 147).

b)  Pain, Credibility, and Physical Residual Functional Capacity

Plaintiff further contends that the ALJ failed to properly consider and credit her complaints of lumbar and cervical pain. The court recognizes that pain is considered disabling under the Social Security Act only when it is "constant, unremitting, and wholly unresponsive to therapeutic treatment." *Selders v. Sullivan*, 914 F.2d 614, 618-619 (5th Cir. 1990). The ALJ's decision regarding the credibility of plaintiff's complaints of pain is entitled to considerable judicial deference if supported by substantial evidence. *James v. Bowen*, 793 F.2d 702, 706 (5th

---

(citing AMERICAN PSYCHIATRIC ASS'N DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS at 32 (4th ed. 1994) (DSM-IV)).

[7] A GAF of 51-60 is defined as "**[m]oderate symptoms** (e.g. flat affect and circumstantial speech, occasional panic attacks) **OR moderate difficulty in social, occupational, or school functioning** (e.g., few friends, no friends, unable to keep a job). *Diagnostic and Statistical Manual of Mental Disorders*, Fourth Edition, DSM-IV, pg. 32. A GAF of 61-70 indicates "**[s]ome mild symptoms** (e.g., depressed mood and mild insomnia) **OR some difficulty in social occupational, or school functioning** (e.g., occasional truancy, or theft within the household), **but generally functioning pretty well, has some meaningful interpersonal relationships**." DSM-IV, pg. 32. The range indicated by Phansalkar was primarily on the mild side.

Cir. 1986); *Wren v. Sullivan*, 925 F.2d 123, 128 (5th Cir. 1991).  Factors that the ALJ may consider in evaluating the claimant's subjective complaints include: (1) claimant's daily activities; *Falco v. Shalala*, 27 F.3d 160 (5th Cir. 1994); *Anthony v. Sullivan*, 954 F.2d 289, 296 (5th Cir. 1992); *Reyes v. Sullivan*, 915 F.2d, 151, 155 (5th Cir. 1990); (2) medication the claimant takes for pain; *Anthony v. Sullivan, supra; Villa v. Sullivan,* 895 F.2d 1019, 1024 (5th Cir. 1990); (3) degree of medical treatment; *Villa, supra; Nickerson v. Secretary of Health and Human Services*, 894 F. Supp. 279 (E.D. Tex. 8/3/1995)*;* (4) lack of medical opinions in the record indicating the claimant is precluded from performing the level of activity indicated by the ALJ; *Villa, supra;* and (5) external manifestations of debilitating pain such as marked weight loss.  *Falco v. Shalala*, 27 F.3d 160 (5th Cir. 1994); *see also* 20 C.F.R.§§404.1529(C)(3)(I)-(vii), 416.929(c)(3)(I)-(vii) (1993).

In this case, the ALJ carefully considered plaintiff's complaints of pain and found that her impairments could reasonably cause her alleged symptoms.  (Tr. 250).  However, he did not credit her allegations regarding the intensity, persistence, and limiting effects of the symptoms to the extent that they were inconsistent with the residual functional capacity assessment.  *Id*.  Despite evidence from a non-examining orthopedic surgeon, Frank Barnes, M.D., that would have provided substantial support for a residual functional capacity for work at the medium exertional level,[8] the ALJ, instead, partially credited plaintiff's allegations and reduced her residual functional capacity to limited light or sedentary work.[9]  The ALJ's analysis satisfied the

---

[8]  *See* Tr. 298-310.

[9]  Plaintiff contends that her treatment records harbor evidence that could have supported additional limitations as a result of her back and neck pain.  However, Dr. Barnes was the sole physician to have considered these records and to have opined regarding the severity and effects of the impairments.  Whether these treatment records compel greater limitations of functioning is beyond this court's expertise.

requirements of 20 C.F.R. § 404.1529, and his resolution is supported by substantial evidence. *See Undheim v. Barnhart*, 214 Fed. Appx. 448 (5th Cir. Jan. 19, 2007) (unpubl.) (opinion as a whole gave sufficient reasons and documentation for the ALJ's credibility determination); *Cornett v. Astrue*, 261 Fed. Appx. 644 (5th Cir. Jan. 3, 2008) (unpubl.) (ALJ gave some weight to claimant's complaints; thus claimant's arguments that his subjective complaints were not given enough weight is unavailing); *Story v. Astrue*, Docket No. 08-10234 (5th Cir. Sept. 30, 2008) (unpubl.) (ALJ fulfilled obligation to make explicit credibility findings when he considered claimant's allegations and found them inconsistent with the medical evidence).

### III.     Steps Four and Five

The ALJ concluded at Step Four of the sequential evaluation process that Rey could not perform her past relevant work. (Tr. 252). Accordingly, he proceeded to Step Five. At this step, the ALJ employed a vocational expert to determine that, given her vocational background and residual functional capacity, Rey was capable of making an adjustment to such representative jobs as surveillance system monitor and document preparer that exist in substantial numbers in the national economy. (Tr. 252-253).

For the foregoing reasons, the undersigned finds that the Commissioner's determination that Rey was not disabled under the Social Security Act, is supported by substantial evidence and remains free of legal error. Accordingly,

**IT IS RECOMMENDED** that the Commissioner's decision to deny disability benefits be **AFFIRMED**, and that this civil action be **DISMISSED** with prejudice.

Under the provisions of 28 U.S.C. §636(b)(1)(C) and FRCP Rule 72(b), the parties have **fourteen (14) days** from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within

**fourteen (14) days** after being served with a copy thereof.  A courtesy copy of any objection or response or request for extension of time shall be furnished to the District Judge at the time of filing.  Timely objections will be considered by the District Judge before he makes a final ruling.

**A PARTY'S FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS, CONCLUSIONS AND RECOMMENDATIONS CONTAINED IN THIS REPORT WITHIN FOURTEEN (14) DAYS FROM THE DATE OF ITS SERVICE SHALL BAR AN AGGRIEVED PARTY, EXCEPT ON GROUNDS OF PLAIN ERROR, FROM ATTACKING ON APPEAL THE UNOBJECTED-TO PROPOSED FACTUAL FINDINGS AND LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT JUDGE.**

THUS DONE AND SIGNED in chambers, at Monroe, Louisiana, this 10th day of January 2012.

KAREN L. HAYES
U. S. MAGISTRATE JUDGE